**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **APRIL ROSE WILKENS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 02-CV-244-TCK-SAJ** |
| | ) | |
| **MILLICENT NEWTON-EMBRY,** | ) | |
| **Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner is a state inmate appearing *pro se*. Before the Court is Petitioner's petition for writ of habeas corpus, as amended (Dkt. ## 1, 39). Respondent has filed a response to the amended petition (Dkt. # 45). Respondent has also provided a partial trial transcript and copies of state court documents for the Court's use in evaluating Petitioner's claims (Dkt. ## 46, 47, 48, 52). Petitioner has filed a reply (Dkt. # 50) to Respondent's response, and amendments and supplements to her petition and brief (Dkt. ## 12, 13, 14, 35, 39). Also pending before the Court are the following motions filed by Petitioner: motions to supplement (Dkt. ## 59, 60), and motion to file second amendment to petition for writ of habeas corpus (Dkt. # 62). Petitioner provided her proposed supplements and "second amendment" along with her motions. Respondent filed an objection to the motion to supplement docketed as document # 59. See Dkt. # 61. In the proposed second amendment, Petitioner asserts additional facts and argument in support of the ineffective assistance of appellate counsel claims raised as ground one. Accordingly, the claims asserted in the second amendment shall be adjudicated as supplements to the ineffective assistance of counsel claim raised in ground one.

For the reasons discussed below, the Court finds the petition, as amended and supplemented,

shall be denied. In addition, Petitioner's motions to supplement and amend her habeas corpus petition shall be granted.  To the extent they are relevant to disposition of the issues before the Court, the supplements (Dkt. ## 59, 60) and second amendment, adjudicated as a supplement, (Dkt. # 62) have been considered by the Court in analyzing Petitioner's claims.

### BACKGROUND

Petitioner, a college graduate with a post-graduate degree in prosthetics, met Terry Carlton sometime in September or October, 1995, while shopping for an automobile at the dealership owned by Mr. Carlton's family. They began dating in October, 1995, and became engaged two months later on Christmas eve. According to Petitioner, the couple traveled frequently to Dallas and also took trips to Jamaica and the Bahamas in the early months of the engagement. Problems in the relationship developed soon after the engagement, and escalated to the first instance of physical abuse when Mr. Carlton grabbed Petitioner by the throat in April, 1996. Further instances of physical abuse occurred during the following months, including attacks by Mr. Carlton on Petitioner while they were on vacations to Europe. The relationship and the engagement were "off and on" during 1996.  On Valentines Day, 1997, another physical attack occurred, causing Petitioner to call 911 and seek assistance from the police. Although the engagement was off, the parties once again took a vacation together to Europe in the Spring of 1997. Both parties were using drugs at this time, but Mr. Carlton became abusive to Petitioner at the hotel in Greece when he ran out of cocaine. Over the next year, there were numerous incidents of abuse and contention between the parties. Petitioner filed documentation in the Tulsa County District Court for emergency protective orders on three different occasions, but never appeared at the hearings to obtain a protective order. In addition, domestic violence calls were placed to the police on numerous occasions from both Petitioner's

home and Mr. Carlton's home. By the Spring of 1998, the parties were no longer engaged or dating, but they were still fighting. Petitioner admits that she tried to shoot Mr. Carlton during a violent episode on April 11, 1998, but the gun misfired. Further, Petitioner reports that Mr. Carlton continued to harass and threaten her.

In the early morning hours of April 28, 1998, the Tulsa Police Department received a call of a possible shooting at 2278 East 38th Street in Tulsa, Oklahoma. Upon arriving at the scene, the police officers approached the house and observed a female inside the house. Petitioner opened the door and acknowledged to the officers that she had shot her former fiancé, Terry Carlton. Petitioner directed the officers to the basement where the deceased victim was found. She was charged with first degree murder for the homicide of Terry Carlton. Petitioner was convicted by a jury in Tulsa County District Court, Case No. CF-98-2173, of First Degree Murder. The jury recommended that Petitioner be sentenced to life imprisonment. On July 7, 1999, the trial judge sentenced Petitioner in accordance with the jury's recommendation. Petitioner was represented at trial by attorney Chris Lyons.

Petitioner appealed her convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA"). On appeal, Petitioner was represented by attorney Bill Zuhdi. He raised six (6) propositions of error as follows:

Proposition 1:  The evidence was insufficient to sustain April's conviction of murder in the first degree.

Proposition 2:  The trial court committed reversible error in failing to submit a jury instruction on manslaughter.

Proposition 3:  The jury should have received an instruction for manslaughter and consequently, trial counsel was ineffective for failing to submit the written jury instruction on manslaughter.

Proposition 4:   April received ineffective assistance of trial counsel when trial counsel failed to object to a statement made by April prior to her Miranda warnings being read to her by law enforcement.

Proposition 5:   The trial court erred in finding that April had waived her rights and that her confession was freely and voluntarily made and trial counsel was ineffective in failing to present to the trial court at trial the fact that April had been coerced into making the statement.

Proposition 6:   The trial errors complained of herein cumulatively denied April's right to a fair trial under the United States and Oklahoma Constitution and therefore, her conviction and sentence must be reversed.

(Dkt. # 47, Ex. A).  In an unpublished summary opinion, filed April 3, 2001, in Case No. F-1999-927, the OCCA affirmed Petitioner's conviction (Dkt. # 48, Ex. C). Nothing in the record suggests Petitioner filed a petition for writ of *certiorari* in the United States Supreme Court.

Next, Petitioner, represented by attorney David R. Blades,[1] filed the instant habeas corpus action on April 2, 2002 (Dkt. # 1), raising five (5) grounds of error. Because not all of the errors raised had been exhausted in state court, the Court entered an Order on February 27, 2003, staying this matter pending the exhaustion of state remedies by Petitioner (Dkt. # 18).

On September 9, 2003, Petitioner, appearing *pro se*, filed an application for post-conviction relief in the state district court.  See Dkt. # 39, attachments.  She identified the following six (6) grounds of error, all relating to ineffective assistance of counsel claims:

Ground 1:   Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to investigate the Petitioner's defenses constituted ineffective assistance of counsel. Further, her appellate counsel was ineffective for failing to raise this issue on direct appeal.

Ground 2:   Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to enter an outstanding bench warrant for Terry Carlton's

---

[1] By Order filed May 22, 2003, attorney Blades was allowed to withdraw as attorney of record, and Petitioner's motion to proceed *pro se* was granted (Dkt. # 24).

4

arrest into evidence at her jury trial constituted ineffective assistance of counsel. Further, her appellate counsel was ineffective for failing to raise this issue on direct appeal.

Ground 3:     Petitioner was denied her sixth Amendment right to counsel because trial counsel's failure to enter the results of her 28 April 1998 urinanalysis into evidence at her jury trial constituted ineffective assistance of counsel. Further, her appellate counsel was ineffective for failing to raise this issue on direct appeal.

Ground 4:     Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to enter a transcript of Tulsa Police Officer Laura Fadem's previous in camera testimony into evidence before Petitioner's jury at Petitioner's April 1999, jury trial constituted ineffective assistance of counsel. Further, her appellate counsel was ineffective for failing to raise this issue on direct appeal.

Ground 5:     Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to present testimony from a battered woman syndrome expert at Petitioner's April 1999 jury trial constituted ineffective assistance of counsel. Further, her appellate counsel was ineffective for failing to raise this issue on direct appeal.

Ground 6:     The claims presented in propositions one through six [sic] cumulatively denied Petitioner her Sixth Amendment right to effective assistance of counsel in violation of the United States and Oklahoma Constitutions, and therefore her conviction and sentence should be reversed.

(Dkt. # 39, attachment). The state district court denied post-conviction relief, finding that Petitioner's ineffective assistance of trial counsel claims failed because her trial counsel "acted as a reasonably competent attorney under the facts and circumstances of the case." Id. The district court also found that appellate counsel's representation was not ineffective. Id. Petitioner appealed. By Order filed August 2, 2004, in Case No. PC-2003-1002, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 47, Ex. E.

On August 18, 2004, Petitioner filed her notice of exhaustion of state court remedies and an amended habeas corpus petition, alleging the following grounds of error:

5

Ground 1:    Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to properly investigate her defense constituted ineffective assistance of counsel. Further, appellate counsel was ineffective for failing to raise this claim on direct appeal.

Ground 2:    Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to request a jury instruction for manslaughter rose to the level of ineffective assistance of counsel.

Ground 3:    Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to present an outstanding Tulsa County bench warrant for Terry Carlton's arrest constituted ineffective assistance of counsel. Further, appellate counsel was ineffective for failing to raise this claim on direct appeal.

Ground 4:    Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to present the results of her 28 April 1998 urinalysis constituted ineffective assistance of counsel. Further, appellate counsel was ineffective for failing to raise this claim on direct appeal.

Ground 5:    Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to present a transcript of Tulsa Police Officer Laura Fadem's previous in camera testimony constituted ineffective assistance of counsel. Further, appellate counsel was ineffective for failing to raise this claim on direct appeal.

Ground 6:    Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to present testimony from a qualified battered woman syndrome expert constituted ineffective assistance of counsel. Further, appellate counsel was ineffective for failing to raise this claim on direct appeal.

Ground 7:    Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to object to a statement made by her prior to her Miranda warnings being read to her constituted ineffective assistance of counsel.

Ground 8:    Petitioner was denied her Sixth Amendment right to counsel because trial counsel's failure to present to the trial court the fact that she had been coerced into making a statement constituted ineffective assistance of counsel.

(Dkt. ## 34, 39).  Respondent filed a response to the petition, as amended (Dkt. # 45), contending

that grounds 1, 3, 4 and 5 are procedurally barred. Respondent also argues that Petitioner is not

6

entitled to relief on any of her claims of ineffective assistance of trial and appellate counsel. Petitioner filed a reply (Dkt. # 50), and has supplemented her arguments with briefs, supplements and amendments (Dkt. ## 12, 13, 14, 35, 39, 59, 60, 62).

## *ANALYSIS*

### A.      **Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes (Dkt. # 45 at 2), and the Court agrees, that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B.      **Claims adjudicated by OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v.

7

Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, the OCCA adjudicated Petitioner's claims on direct appeal or in post-conviction proceedings. Therefore, to the extent Petitioner's claims are not procedurally barred, those claims shall be reviewed pursuant to § 2254(d).

### 1.     Omission of jury instruction for manslaughter (ground 2)

In her ground two claim, Petitioner contends that her trial counsel was constitutionally ineffective because he did not request an instruction allowing the jury to find her guilty of manslaughter (Dkt. # 2 at 14). This issue was rejected by the OCCA on direct appeal.[2] Oklahoma's manslaughter statute provides:

Homicide is manslaughter in the first degree in the following cases:

1.     When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

2.     When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

3.     When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.

Okla. Stat. Ann. tit. 21, § 711. Further, under Oklahoma law, "all lesser forms of homicide are necessarily included and instructions on lesser forms of homicide should be administered if they are

---

[2]   Petitioner raised two related issues on direct appeal: (1) the trial court committed reversible error in failing to submit a jury instruction on manslaughter (proposition two); and (2) the jury should have received an instruction for manslaughter and consequently, trial counsel was ineffective for failing to submit the written jury instruction on manslaughter (proposition three). See Dkt. # 47, Ex. A.

supported by the evidence." Shrum v. State, 991 P.2d 1032, 1036 (Okla. Crim. App. 1999).  Citing

Shrum, the OCCA found that "the trial court did not err in failing to *sua sponte* instruct on first

degree manslaughter as such an instruction was not warranted by the evidence." See Dkt. # 48, Ex.

C at 2. The OCCA further determined that trial counsel was not ineffective for failing to request a

jury instruction on first degree manslaughter "as such instruction was not warranted by the evidence.

Workman v. State, 824 P.2d 378, 383 (Okl.Cr. 1991)." Id.

Petitioner is not entitled to habeas corpus relief on her claim of ineffective assistance of

counsel unless she establishes that the OCCA's adjudication of this claim was an unreasonable

application of Supreme Court precedent.   The Court notes that the Supreme Court has not

recognized a constitutional right to a lesser-included offense instruction in a non-capital case.[3]

Furthermore, to establish that her counsel was constitutionally ineffective for failing to request a

lesser-included offense at her trial, Petitioner must show that her counsel's performance was

deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S.

668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). Petitioner must

establish the first prong by showing that her counsel performed below the level expected from a

reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88.  There is a "strong

presumption that counsel's conduct falls within the range of reasonable professional assistance." Id.

at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on

---

[3] The Tenth Circuit Court of Appeals has held that the failure of a state court to instruct on
a lesser included offense in a noncapital case never raises a federal constitutional question. Lujan
v. Tansy, 2 F.3d 1031, 1036 (10th Cir. 1993).  Tenth Circuit precedent establishes a rule of
"automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to
give a lesser included offense instruction.  Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004)
(stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a
federal constitutional right to a lesser included offense instruction in non-capital cases).

the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second prong, Petitioner must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).  Failure to establish either prong of the Strickland standard will result in denial of relief.  Id.; Hatch v. Oklahoma, 58 F.3d 1447, 1457 (10th Cir.1995).

In this case, the failure of Petitioner's trial counsel to request a first degree manslaughter instruction was neither objectively unreasonable nor prejudicial to Petitioner under the first and second prongs of Strickland, because no evidence was introduced at trial supporting a first degree manslaughter instruction. There was no evidence that, when she killed Terry Carlton, Petitioner was committing a misdemeanor, acting in the heat of passion but without a design to cause death, or was resisting an attempt by the victim to commit a crime or after such an attempt failed. The OCCA's adjudication of this claim was neither contrary to, nor an unreasonable application of Supreme Court law, see 28 U.S.C. § 2254(d)(1), when it concluded that trial counsel was not ineffective because the jury instruction was not warranted by the evidence. Accordingly, Petitioner is not entitled to habeas corpus relief on her ground two claim.

### 2.      Failure to present qualified battered woman syndrome expert (ground 6)

In her sixth ground for relief Petitioner asserts that her trial counsel's failure to present

10

testimony from a qualified battered woman syndrome ("BWS") expert constituted ineffective assistance of counsel. She further claims that her appellate counsel was ineffective for failing to raise this claim on direct appeal. This claim was raised for the first time in post-conviction proceedings. After reviewing the merits, the state district court specifically found that Petitioner did not overcome the first prong of the <u>Strickland</u> standard. On post-conviction appeal, the OCCA stated:

> In this appeal, Petitioner contends she was denied effective assistance of both trial and appellate counsel. . . . Petitioner primarily challenges the District Court's finding relating to battered woman syndrome ("BWS"). Petitioner complains her trial attorney failed to present testimony from a qualified BWS expert, and went so far as to erroneously represent a forensic psychologist as a BWS expert. She claims appellate counsel's failure to assert this issue amounts to ineffective assistance of counsel as found in *Paine v. Massie*, 339 F.3d 1194 (10th Cir. 2003). . . .

> Petitioner has failed to establish entitlement to relief in a post-conviction proceeding. With the exception of her claim of ineffective appellate counsel, the propositions of error asserted by Petitioner in this post-conviction proceeding, including her claim of ineffective trial counsel, either were raised or could have been raised during trial or on direct appeal. . . .

> Petitioner's claim that her appellate counsel was ineffective is without merit. Petitioner's reliance on *Paine* to support her claim of ineffective appellate counsel with regard to her BWS claim is misguided.

> Contrary to the assertion of the United States Court of Appeals for the Tenth Circuit, this Court, in *Bechtel v. State*, 1992 OK CR 55, 840 P.2d 1, did not announce the professional standard in Oklahoma for an attorney representing a battered woman. *See Paine v. Massie*, 339 F.3d 1194, 1202-03. This Court cannot and would not ignore our adversarial system of justice and dictate that trial counsel is required to present a criminal defense in a specified way. Nowhere in the *Bechtel* decision is effectiveness of counsel even discussed. . . .

> Petitioner's complaint that appellate counsel failed to raise [this] issue on direct appeal does not establish ineffectiveness. *Walker v. State*, 1997 OK CR 3, ¶ 14, 933 P.2d 327, 334. Petitioner makes one specific complaint that her appellate counsel's performance was deficient under prevailing professional norms. She claims appellate counsel was ineffective for not asserting a challenge to the credentials of the witness presented as an expert on BWS by her retained trial counsel. Petitioner contends the witness was not an expert because his testimony was not consistent with writings by Dr. Lenore Walker in her book *The Battered Woman Syndrome,* 2nd Ed.

11

(New York: Springer Publishing Company, 2000).

> At trial, both counsel for Petitioner and the prosecutor acknowledged that the witness was an expert. The witness is a board certified psychologist in Oklahoma, and testified that he had extensive experience with BWS. As the District Court found, Petitioner has not established that any failure by her appellate counsel, to raise or adequately challenge the status of the witness as an expert in this case, caused counsel's performance to be deficient under prevailing professional norms. *Strickland, supra.*

Dkt. # 47, Ex. E at 3-5.

Relying on <u>Paine v. Massie</u>, 339 F.3d 1194 (10th Cir. 2003), Petitioner asserts that her trial attorney was ineffective because the "expert" he presented in her defense was a forensic psychologist and not qualified to render BWS testimony. She contends that the expert's testimony was erroneous about BWS and inaccurate about Petitioner. Further, he was not a qualified BWS expert "because his degree of experience working with and studying battered women does not amount to expertise." Dkt. # 50 at 45. Petitioner asserts that he did little to educate her jury about her circumstances. <u>Id.</u> at 36-50. To support her position, Petitioner quotes extensively from the writings of Dr. Lenore Walker,[4] the "definitive battered woman syndrome authority cited by many courts." Dkt. # 39 at 21-25. Respondent contends that trial counsel committed no error because he did provide a meaningful BWS defense.

A review of the record reveals that Petitioner's claim is without merit. Petitioner's trial attorney presented Dr. John Call, a board certified forensic psychologist, as an expert witness to support Petitioner's BWS claim. Dr. Call described his training, education and experience relating to BWS, as follows:

---

[4]   Although Petitioner challenges her attorney's use of a forensic psychologist as an expert, the Court notes that, according to Petitioner, Dr. Walker is also a forensic psychologist as well as a clinical psychologist. <u>See</u> Dkt. # 39 at 21 n. 2.

Q:      Can you give us a brief history of your involvement with that area of your clinical practice and training and education in that area, please, sir?

A:      Well, first off, as a state officer, and as a member of the Board of Directors of the Department of mental Health, I and six other members of the Board are directly responsible for all state certified and contracted domestic violence facilities in the State of Oklahoma.

Next, I have personally been involved in the treatment of battered women, and have also been involved in the analysis of battered women who kill the alleged batterer.

And right now I'm involved in four cases of an individual -- of individuals where there's a battering women's syndrome issue; this case for the defense, two other cases where there was a homicide, where I am consultant with the prosecution, the district attorneys, and then another case where I'm working with the district attorneys where there was an individual who was kidnapping a battered woman.

Q:      All right. And, Dr. Call, in relation to the battered women's experiences that you've had, have you diagnosed those situations as well, sir?

A:      Yes. Do you mean diagnose in terms of using our diagnostic manuals?

Q:      Yes.

A:      Yes.

Tr. Trans. Vol. 15 at 2806-07.  Dr. Call also testified that he has been certified in various courts as an expert in the areas discussed. Id. at 2808. Without objection from the State, the trial court accepted Dr. Call as an expert. Id.

Dr. Call provided the jury with a detailed explanation of BWS. See Tr. Trans. 15 at 2815-17. He further testified that Petitioner exhibited the following BWS symptoms: (1) actual physical evidence of being battered; (2) evidence of physical trauma over a period of time; (3) fear and apprehension regarding the battering; (4) increasing isolation from friends, family, and work with resulting loss of support from those outside sources; (5) difficulty in following through with protective orders; (6) traumatic bonding; and (7) classic BWS pattern of complaining to friends and

13

others but not leaving the batterer. Id. at 2819-26. Dr. Call concluded his direct examination testimony by opining that, "The defendant's descriptions of the events of the early morning of April 28th, 1998, are consistent with other similar reports about the couple's battering relationship, and it's my opinion that the balance of the data supports the conclusion that the Defendant was psychotic at the time of the shooting, believed she was in danger, and believed that her use of force was justified." Id. at 2852.

The jury did not accept the BWS defense. However, the jury's finding of guilt was not a result of trial counsel's failure to present an expert in support of her BWS claim. In the Paine case, the defendant's trial attorney failed to ask his defense psychologist expert to explain BWS, and did not attempt to present the witness as a BWS expert. Paine, 339 F.3d at 1200-02. Accordingly, the Tenth Circuit found, "[C]ounsel's failure to offer BWS testimony to provide context for the jury on the reasonableness of Ms. Paine's subjective fear amounts to objectively unreasonable performance." Id. at 1202. Contrary to defense counsel's performance in the Paine case, Petitioner's defense counsel presented Dr. Call as a BWS expert and elicited testimony concerning both the symptoms of BWS and his assessment of how the experiences of Petitioner, as a battered woman, impacted her state of mind at the time of the killing. This Court finds that trial counsel's performance in presenting Dr. Call as a BWS expert witness was not constitutionally deficient performance under the mandate of Strickland. Accordingly, her appellate counsel was not ineffective for failing to raise this issue on direct appeal. The OCCA's finding was not an unreasonable application of Supreme Court law, and Petitioner is not entitled to relief on this issue.

**3.    Failure to object to admission of statements made prior to Miranda[5] warnings**

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

**(ground 7)**

In her seventh claim for habeas relief, Petitioner contends that her trial counsel was ineffective because he failed to object to the admission into evidence of a statement she made to police upon their arrival at the crime scene. At issue is the admission of the following testimony by Tulsa police Officer Lawson, describing the investigating officers' initial contact with Petitioner upon arriving at the crime scene:

Q:      At the time that you saw the female on the inside on the stairs, what did you all do?

A:      We yelled, "Police officers. Open the door."

Q:      What happened?

A:      She came down and opened the door. And when she opened the door, we was all standing there looking at the person for a second, and then I believe it was Officer Gann said, "We're responding here to a shooting." And she was standing there nodding her head. And at that point I asked her, "Did you shoot him?" She said, "Yes." I said, "Where is the gun?" She said, "It's downstairs." Then I asked her, I said, "Where is he?" And she said, "Downstairs."

Tr. Trans. Vol. VII at 1349.  It is uncontested that Petitioner had not been read her <u>Miranda</u> rights before she responded to the above described questions from Officer Lawson. Petitioner maintains that her statements were improperly admitted because <u>Miranda</u> warnings should have been given before any questioning by law enforcement, and that her trial attorney was ineffective for failing to object to their admission. She also claims that any statements made by her following the "unlawfully obtained response," including statements made after being given a <u>Miranda</u> warning, should have been quashed. <u>See</u> Dkt. # 39 at 31. Rejecting this claim on direct appeal, the OCCA found:

In Proposition IV, appellant has failed to show a reasonable probability that, but for counsel's failure to object to the admission of her initial statements made to police at the murder scene, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Fisher v. State*, 736 P.2d 1003, 1012 (Okl. Cr. 1987). Assuming arguendo, Appellant's initial

15

statements made at the murder scene were subject to *Miranda* any error in admitting those statements was harmless beyond a reasonable doubt as other admissions made after the giving of the *Miranda* warning and the waiver of those rights were properly admitted. *See Bartell v. State*, 881 P.2d 92, 99 (Okl. Cr. 1994). Consequently, any failure by trial counsel to object to the admission of those initial statements did not prejudice Appellant and therefore is not indicative of ineffective assistance. *Phillips v. State*, 989 P.2d 1017, 1044 (Okl.Cr. 1999).

Dkt. # 48, Ex. C at 2-3.

Miranda warnings are due only when a suspect being interrogated by police is "in custody." See Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (officer's obligation to administer Miranda warnings attaches "only where there has been such a restriction on a person's freedom as to render him 'in custody'"). Police failure to honor Miranda rights does not result in suppression of a voluntary statement made in a noncustodial setting. Respondent contends that Petitioner was not in custody at the time she made the statements at issue (Dkt. # 45 at 31-2). Accordingly, their admission was not a violation of Miranda, and Petitioner's trial attorney was not ineffective for failing to challenge admission of the statements. The Court agrees. The initial questioning by police officers upon arriving at the door of the victim's home fell short of placing Petitioner "in custody" for purposes of triggering Miranda. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). The police were investigating a phone report of a possible shooting, and did not yet know if a crime had been committed when Petitioner answered the door.

In Missouri v. Seibert, 542 U.S. 600 (2004), a case relied upon by Petitioner,[6] the defendant

---

[6] In her amended brief in support of the habeas corpus petition (Dkt. # 39), Petitioner incorporates by reference the authority cited and arguments made in her supplement to Petitioner's reply filed in the OCCA. See Dkt. # 39 at 32. Although the referenced supplement to Petitioner's

was arrested and taken to the police station where she was questioned for 30 to 40 minutes before being given a <u>Miranda</u> warning.  <u>Seibert</u>, 542 U.S. at 604-05. The Supreme Court found that the late recitation of warnings, after interrogation and an "unwarned" confession, did not comply with <u>Miranda's</u> warning requirement, thus rendering the postwarning statements inadmissible. <u>Id.</u> at 601. The <u>Seibert</u> case is easily distinguishable from Petitioner's case. In <u>Seibert</u>, the police intentionally employed the technique of interrogating in successive, unwarned and warned phases.  The officers conducted a two-stage interrogation, purposely obtaining a confession pre-warning, then reading the <u>Miranda</u> warning and asking Seibert to repeat the incriminating statements. Further, all questioning took place at the police station after Seibert was arrested for the murder of her son. In Petitioner's case, the officers were not certain that a crime had occurred when they approached Mr. Carlton's home and Petitioner answered the door. Petitioner was not in custody when she initially told the police officers that she had shot the victim. Shortly after police entered the house, Petitioner was read her <u>Miranda</u> rights and continued telling her version of the facts.

This Court finds that the initial statement by Petitioner that she shot the victim was not made during a custodial interrogation and was admissible even though made prior to a <u>Miranda</u> warning. Petitioner's counsel was not ineffective for failing to challenge the admissibility of the statement, and the OCCA's ruling was not an unreasonable application of Supreme Court law. 28 U.S.C. § 2254. Accordingly, no habeas relief is available on this claim.

**4.      Failure to object to coerced statements to police (ground 8)**

In her eighth ground for relief, Petitioner claims her trial counsel was ineffective for failing

---

reply does not contain a specific citation to the <u>Seibert</u> case, it is clear she was referring to <u>Seibert</u> as the June 28, 2004, United States Supreme Court case reported in the Tulsa World article attached to the pleading. Dkt. # 39, attachment.

to object to the admission of her videotaped statement to police. Although her statement was made following a <u>Miranda</u> warning, Petitioner contends it was coerced because the police would not take her for a rape exam until she taped her statement (Dkt. # 39 at 33-34).  Rejecting this claim on direct appeal, the OCCA stated:

> In Proposition V, sufficient evidence was presented to show that Appellant's statements made during the videotaped interview were made knowingly, voluntarily and freely. Therefore, the trial court properly admitted the statements. *Gilbert v. State*, 951 P.2d 98, 111 (Okl.Cr.1997). Further, trial counsel was not ineffective for failing to object to the admissibility of Appellant's statements on the grounds her statements were coerced by failure of the police to immediately provide her with a rape examination and medical treatment.

<u>See</u> Dkt. # 48, Ex. C at 3.

The state appellate court's finding that Petitioner's videotaped interview was made "knowingly, voluntarily and freely" is entitled to a presumption of correctness under the standards of 28 U.S.C. § 2254(e)(1). Petitioner bears the burden of overcoming the presumption by clear and convincing evidence. <u>See</u> <u>Trice v. Ward</u>, 196 F.3d 1151, 1169-70 (10th Cir. 1999). Petitioner has not produced clear and convincing evidence to rebut the finding that her videotaped statement was voluntary. Courts look to the totality of circumstances to determine whether a confession was voluntary, including factors such as the length of the interrogation, its location, its continuity, the defendant's maturity, physical condition and mental health and the possible failure of police to advise the defendant of her <u>Miranda</u> rights.[7] <u>See</u> <u>Withrow v. Williams</u>, 507 U.S. 680, 693-94 (1993) and cases cited therein; <u>see also</u> <u>Mitchell v. Gibson</u>, 262 F.3d 1036, 1059 (10th Cir. 2001). The taped

---

[7] The record contains a copy of the Tulsa Police Department's written notification of <u>Miranda</u> rights and Petitioner's signed waiver of such rights indicating she was willing to answer questions. <u>See</u> Dkt. # 52, State's Ex. 68. In addition, the videotape begins with Petitioner acknowledging that she waives her <u>Miranda</u> rights. <u>See</u> Dkt. # 46, State's Ex. # 69.

interrogation itself reveals no action by the interviewing police officer that would support a finding

of coercion sufficient to overcome Petitioner's understanding of her <u>Miranda</u> warnings. A review of

the entire record and the totality of the circumstances also convinces this Court that the videotaped

statement was not coerced. Accordingly, Petitioner's trial counsel was not ineffective for failing to

challenge the admission of the videotaped statement at trial. Further, the OCCA's findings on this

issue were not based on an unreasonable determination of the facts in light of the evidence presented,

nor did they involve an unreasonable application of clearly established federal law, as determined by

the Supreme Court. 28 U.S.C. § 2254(d). Habeas relief shall not be granted on this issue.

**C.      Procedural Bar (grounds 1, 3, 4, and 5)**

The record confirms that the issues raised in Petitioner's first, third, fourth and fifth grounds

were not presented to the OCCA on direct appeal. These claims were raised for the first time in

Petitioner's post-conviction proceedings. In its order affirming the district court's denial of post-

conviction relief, the OCCA stated:

> Petitioner has failed to establish entitlement to relief in a post-conviction proceeding.
> With the exception of her claim of ineffective appellate counsel, the propositions of
> error asserted by Petitioner in this post-conviction proceeding, including her claim of
> ineffective trial counsel, either were raised or could have been raised during trial or
> on direct appeal. All issues which were previously asserted are barred as *res judicata*,
> and all issues which could have been previously asserted are waived. Such issues may
> not be the basis of a post-conviction application. 22 O.S. 2001, § 1086; *Fowler v.
> State*, 1995 OK CR 29, ¶2, 896 P.2d 566, 569.

Dkt. # 47, Ex. E at 2-3.

The doctrine of procedural default prohibits a federal court from considering a specific habeas

claim where the state's highest court declined to reach the merits of that claim on independent and

adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual

prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider

the claim[ ] will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A state court finding of procedural default is independent if it is separate and distinct from federal law."  Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'"  Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)).  The Tenth Circuit has recognized that, "Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground" barring federal habeas corpus review. Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999).

Applying the principles of procedural bar to this case, the Court concludes that Petitioner's first, third, fourth and fifth grounds for relief  are procedurally barred. The OCCA's procedural bars, based on Petitioner's failure to raise grounds one, three, four and five on direct appeal are "independent" state grounds because state law provided "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985.  Additionally, the procedural bars imposed on these four claims were based on  "adequate" state grounds sufficient to bar the claims on federal habeas corpus review. See Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993) The OCCA routinely bars claims that could have been but were not raised on appeal.

When the underlying claim is ineffective assistance of counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns may justify an exception to the general rule of procedural default.  Brecheen v. Reynolds, 41 F.3d 1343, 1363 (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).  The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel

on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364

(citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)).  The Tenth Circuit explicitly

narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of

counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998).  In

English, the circuit court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those
> limited cases meeting the following two conditions: trial and appellate counsel differ;
> and the ineffectiveness claim can be resolved upon the trial record alone.  All other
> ineffectiveness claims are procedurally barred only if Oklahoma's special appellate
> remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

After reviewing the record in the instant case in light of the factors identified in English, the

Court concludes that the procedural bar imposed by the state courts is based on adequate grounds to

preclude federal habeas review.  Petitioner was represented at trial by attorney Chris Lyons.  On

appeal, Petitioner was represented by Bill Zuhdi.  For purposes of the first requirement identified in

English, the Court finds that Petitioner had the opportunity to confer with separate counsel at trial and

on appeal.  The second English factor requires that the claims could have been resolved either "upon

the trial record alone" or after adequately developing a factual record through some other procedural

mechanism.  Id. at 1263-64.  Even if Petitioner's claims in this case could not all be resolved on the

trial record alone, Petitioner has not alleged that the Oklahoma remand procedure, as provided by

Rule 3.11 of the Oklahoma Court of Criminal Appeals, was inadequate to allow her to supplement

the record on her ineffective assistance of counsel claims.  See Hooks v. Ward, 184 F.3d 1206, 1217

(10th Cir. 1999) (once the state pleads the affirmative defense of an independent and adequate state

procedural bar, the burden shifts to the petitioner to make specific allegations as to the inadequacy

of the state procedure).  Although Respondent has alleged an independent and adequate procedural bar, Petitioner has not put the adequacy of Oklahoma's remand procedure at issue.  As a result, she cannot demonstrate that Oklahoma's procedural bar is inadequate and her claims of ineffective assistance of trial counsel are procedurally barred.

This Court may not consider Petitioner's procedurally barred claims unless she is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if her claim is not considered.  See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941-42 (10th Cir. 1997).  The cause standard requires a petitioner to "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S. 152, 168 (1982).  A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of  the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 494 (1991).

*Cause and Prejudice*

In both state post-conviction proceedings and this habeas corpus matter, Petitioner combines her ineffective assistance of trial counsel claims in grounds one, three, four and five with a statement that, "Appellate counsel was ineffective for failing to raise claims I, III, IV, V, and VI[8] on direct appeal."  See Dkt. # 34 at 2. The Court will construe Petitioner's succinct mention of appellate

---

[8]  Claim Six was addressed on the merits by the state appellate court, and the OCCA's decision was analyzed in Section B.2. above.

counsel liberally, and interpret the statement as an argument that her procedural default is attributable to ineffective assistance of appellate counsel.

It is well established that, in certain circumstances, counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default.  See Murray v. Carrier, 477 U.S. 478, 488-89 (1986). However, the assistance provided by appellate counsel must rise to the level of a constitutional violation under the two-pronged standard established in Strickland.  Petitioner must demonstrate that her counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland, 466 U.S. at 687; Hickman v. Spears, 160 F.3d 1269, 1273 (10th Cir. 1998). In assessing an ineffective assistance of appellate counsel claim, the Tenth Circuit Court of Appeals has held that "the relevant questions are whether appellate counsel was 'objectively unreasonable' in failing to raise these . . . claims on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise these claims, [Petitioner] 'would have prevailed on his appeal.'" Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001); Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003). In analyzing an appellate ineffectiveness claim based upon failure to raise an issue on appeal, the Court must examine the merits of the omitted issue. Neill, 278 F.3d at 1057; Cargle, 317 F.3d at 1202. If the issue is meritless, its omission will not constitute deficient performance. Id.

**1.    Ineffective assistance of trial counsel for failure to properly investigate her defense, and ineffective assistance of appellate counsel for failing to raise this claim on direct appeal (ground 1)**

In this claim, Petitioner asserts that her trial counsel was ineffective for failing to investigate

her defense in three ways: (1) failure to contact an attorney[9] who represented her in protective order proceedings in 1996; (2) failure to contact an attorney[10] who had "first hand information" concerning Petitioner's relationship with Mr. Carlton and who had an audiotape evidencing the abusive relationship between Petitioner and Mr. Carlton; and (3) failure to procure tapes of various 911 calls made to police by Petitioner. See Dkt. # 12 at 11-12.

Regarding trial counsel's failure to contact or subpoena attorney Claire Eagan, the Court notes that there was substantial evidence at Petitioner's trial that Terry Carlton had physically abused and terrorized Petitioner on more than one occasion.  Dr. Joseph Schlect testified that he examined Petitioner in December, 1996, and found bruises "compatible with [her] report of domestic abuse." Tr. Trans. Vol. XIII at 2384-85. A sexual assault nurse examiner for St. Francis Hospital testified that her examination of Petitioner in December, 1997, revealed redness, bruising, tearing and lacerations consistent with Petitioner's statement that she had been raped by Mr. Carlton. Id. at 2486.  Riza Johnson, a mental health aide at Eastern State Hospital in Vinita, Oklahoma, testified that when Terry Carlton visited Petitioner at the hospital, he was agitated and was "hollering at April from the car." Id. at 2517. Betty Cantrell, a nurse at Eastern State Hospital, testified that Mr. Carlton was hostile and cursing when he visited Petitioner. Id. at 2529. Tulsa Police Officer Kimberly Presley testified that she passed Terry Carlton on the lawn when she was responding to a domestic abuse call. When Officer Presley asked him if Petitioner was hurt, he replied, "I don't know. She's one big bruise." Id.

---

[9]  Petitioner was represented by the Honorable Claire Eagan, prior to Judge Eagan assuming her responsibilities on the federal bench in this Northern District of Oklahoma. See Dkt. # 47, Ex. D attachment.

[10]  An affidavit from Michael Cooke, an attorney who represented Petitioner in certain business matters, sets forth Mr. Cooke's knowledge of the situation. See Dkt. # 47, Ex. D attachment.

at 2550.  Tulsa Police Officer Paul Fields testified about being dispatched to domestic abuse calls from Petitioner at Mr. Carlton's house where he observed multiple bruises on Petitioner. Id. at 2569. Neva Lathrop, a nurse's aide at Eastern State Hospital, testified that Terry Carlton was yelling, jumping up and down and flopping his arms during a visit to see Petitioner at the hospital. Tr. Trans. Vol. XIV at 2614. A neighbor of Mr. Carlton, Dr. Brent Laughlin, testified that he heard a window breaking, observed Petitioner in a car with a broken window and noted that Mr. Carlton had taken the car keys away and gone into his house while yelling at Petitioner. Id. at 2625-26. Dr. Charles Teter testified that an examination of Petitioner on approximately May 6, 1997, revealed several areas of fresh bruising consistent with Petitioner's indication that Terry Carlton caused the injuries. Id. at 2632-33. A sales clerk at QuikTrip related his observations of an incident when Petitioner came into the convenience store seeming upset. Shortly thereafter Mr. Carlton arrived and the parties were arguing because Petitioner did not want to leave with Mr. Carlton. The clerk was concerned enough to call 911 and lock the doors when Mr. Carlton left the store. Petitioner also left before the police arrived. Id. at 2647-57. Petitioner's friend, Cheryl Broyles, testified that Petitioner was afraid of Mr. Carlton and wanted to borrow her dog for protection against him. Id. at 2670.  Petitioner's neighbor, Maxine Callicoat, testified that she could hear arguing and yelling when Mr. Carlton was at Petitioner's home. Id. at 2686-88. She also stated that Petitioner had used her phone on occasion to call the police because Mr. Carlton was threatening her. Id. at 2688. Officer Troy Dewitt testified that Petitioner placed a domestic abuse call from her house. Upon arrival the officer stopped Terry Carlton  outside Petitioner's home. Mr. Carlton had a loaded gun and a taser in his possession, and was arrested for transporting a loaded firearm. Id. at 2712-13. Another of Petitioner's neighbors, Carl Hughes, testified that he observed Mr. Carlton trying to break into Petitioner's driveway gate. Id. at

25

2730. Neighbor Glenda McCarley testified that she had let Petitioner use her phone to call the police when she was afraid of Terry Carlton. Id. at 2739. She also testified that she heard screaming from Petitioner's home late at night and observed Mr. Carlton dragging Petitioner by the hair around to the back of her house. Id. at 2744. Sherry Blanton, former wife of Terry Carlton, testified about the protective order she had against him and the battering she suffered from Mr. Carlton. Id. at 2789-90. Finally, Petitioner testified herself about the numerous incidents when Mr. Carlton hit, choked, raped and otherwise abused her.

The Court finds that trial counsel's failure to contact attorney Claire Eagan and to present further cumulative testimony about Terry Carlton's abuse did not rise to the level of a constitutional violation under the standards established in Strickland. Likewise, trial counsel's failure to contact attorney Mike Cooke and obtain a copy of the audiotape referenced by Petitioner did not constitute ineffective assistance of counsel. Although the audiotape reveals that both Petitioner and Mr. Carlton acknowledged a troubled relationship existed between them, there were many other witnesses who testified that the relationship was abusive and contentious, as noted above. Finally, the Court does not agree that trial counsel's failure to obtain and present 911 tapes in support of her theory of self defense was prejudicial to her defense. The jury was presented with ample evidence of battering by Mr. Carlton and police testimony regarding domestic abuse calls concerning Petitioner and Mr. Carlton. Because trial counsel's performance was not deficient, appellate counsel was not ineffective for omitting these claims of ineffective assistance of trial counsel on direct appeal.

> **2.** **Ineffective assistance of trial counsel for failure to present an outstanding Tulsa County bench warrant for Terry Carlton's arrest, and ineffective assistance of appellate counsel for failing to raise this claim on direct appeal (ground 3**)

Terry Carlton was arrested outside Petitioner's home on February 21, 1998, for transporting

a loaded firearm. See Dkt. # 47, Ex. D attachment. On March 25, 1998, a bench warrant was issued for Mr. Carlton in Tulsa County District Court Case No. CM-1998-575, for his failure to appear in court on this charge. Id. Petitioner claims in ground three that her trial attorney should have presented evidence of the outstanding bench warrant to the jury because it could have been used to impeach the testimony of two police officers and would have validated Petitioner's claim that she could not rely on the police to protect her from Mr. Carlton. See Dkt. # 47, Ex. D at 17. Because the OCCA found this issue procedurally barred, the Court will review the merits of the omitted issue to determine whether appellate counsel's ineffectiveness would excuse her procedural default.

Petitioner must overcome the presumption that trial counsel's failure to present the outstanding bench warrant was within the wide range of reasonable professional assistance and might be considered sound trial strategy. Strickland, 466 U.S. at 689. Petitioner has failed to convince the Court that omission of the bench warrant information was critical to Petitioner's defense, or that its omission was unreasonable. Contrary to Petitioner's assertions, the record reflects that police officers took her numerous 911 calls seriously and responded promptly to her calls for help. Petitioner failed to follow through and did not appear at the hearings on her requests for protective orders. Further, the Court is not convinced that, but for omission of the bench warrant information to the jury, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694. Petitioner has failed to establish either prong of the Strickland standard in claiming her trial counsel was ineffective for failing to present the outstanding arrest warrant information. Accordingly, her appellate counsel was not ineffective for failing to raise the issue on direct appeal, and Petitioner cannot rely on ineffective assistance of appellate counsel to excuse her procedural bar of this issue.

**3.     Ineffective assistance of trial counsel for failure to present results of urinalysis, and ineffective assistance of appellate counsel for failing to raise this claim on**

**direct appeal (ground 4)**

Next, Petitioner argues that her trial counsel was ineffective for failing to present the results of her April 28, 1998, urinalysis to the jury. Both blood and urine samples were taken from Petitioner during the rape exam she requested following her arrest. The results of the tests were not presented to the jury, although Petitioner alleges her trial counsel told her the urine sample tested negative for all drugs. Petitioner does not explain how the negative drug test would have affected the outcome of her murder case. Admission of the test results would not prove that she did not pull the trigger and kill Terry Carlton. Nor does the Court believe that the test results would have advanced Petitioner's BWS defense in any way. Petitioner's allegations do not support an ineffective assistance of trial counsel claim. Thus, her appellate counsel was not ineffective for failing to raise this issue. Petitioner has not demonstrated cause for the procedural bar of this issue.

4.   **Ineffective assistance of trial counsel for failure to present a transcript of Officer Fadem's previous testimony, and ineffective assistance of appellate counsel for failing to raise this claim on direct appeal (ground 5)**

In her ground five claim, Petitioner alleges that her trial counsel was ineffective for failing to impeach Officer Fadem's testimony with a transcript of previous *in camera* testimony offered by that witness. During an *in camera* hearing, Officer Fadem testified that after Petitioner opened the door for the officers, she heard Petitioner say, "I shot him, he's in the basement." Officer Fadem did not say exactly what question prompted the response from Petitioner, but she said that Officer Gann and Officer Lawson were there, and started to explain what Officer Gann said when Petitioner's attorney objected. Tr. Trans. Vol. VI at 1102-03. During the trial, Officer Fadem testified that she was behind Officers Gann and Lawson, and heard them say something to Petitioner when she opened the door. Officer Fadem couldn't remember the exact wording of the question posed to Petitioner

28

before Petitioner responded, "I shot him." Tr. Trans. Vol VII at 1456-57.  Officer Fadem's *in camera* testimony and trial testimony were substantially the same. Failure to challenge her on the minor differences certainly does not rise to the level of constitutionally ineffective trial counsel. Appellate counsel was not ineffective for failing to raise this claim on direct appeal, and Petitioner's procedural bar is not excused on this issue.

*Fundamental Miscarriage of Justice*

Having failed to establish cause and prejudice for her procedural bar, Petitioner also argues that her default should be excused because a fundamental miscarriage of justice would result.  The fundamental miscarriage of justice exception to the doctrine of procedural bar is applicable only when a petitioner asserts a claim of actual innocence.  Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995).  Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Id. at 316.  Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329.

In this case, Petitioner fervently argues that she is actually innocent of the first degree murder of Terry Carlton. See Dkt. # 37.  On April 28, 1998, Petitioner removed a gun she had hidden in her vest and fatally shot Terry Carlton. Petitioner plead not guilty, asserting that the killing was done in self-defense and that she was the victim of BWS. She argues in this habeas matter that the shooting was "instinctive survival" and was reasonable and justified based on her perception as a battered woman (Dkt. # 39 at 19). She believes she has established her innocence under Oklahoma law (Dkt.

# 37 at 2). However, Petitioner's jury found her guilty. Petitioner's assertion of actual innocence is not supported by any new evidence which was not presented at trial. See Schlup v. Delo, 513 U.S. 298, 324 (1995) ("To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial."). In fact, she does not claim that new evidence shows she is factually innocent of shooting Terry Carlton. Rather, she asserts that she is legally innocent because her conduct was justified by the doctrines of self-defense and BWS. The miscarriage of justice exception, however, only applies to claims of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000). Therefore, the Court finds that Petitioner has failed to demonstrate that she falls within the fundamental miscarriage of justice exception to the procedural bar doctrine.

As a result of Petitioner's failure to demonstrate either "cause and prejudice" or that a fundamental miscarriage of justice would occur if her claims are not considered, this Court is procedurally barred from considering Petitioner's claims of ineffective assistance of trial and appellate counsel asserted in grounds one, three, four and five.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that she is in custody in violation of the Constitution or laws or treaties of the United States.  Her petition for writ of habeas corpus, as amended and supplemented, shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      Petitioner's motions to supplement (Dkt. ## 59, 60), and motion to file second amendment to petition for writ of habeas corpus (Dkt. # 62) are **granted**.  The claims made in the "second

amendment" have been adjudicated as supplements to the ineffective assistance of counsel claim raised as ground one in the amended petition. The Court has considered the supplements and the "second amendment" attached to Petitioner's motions in analyzing Petitioner's claims herein.

2.    The petition for a writ of habeas corpus (Dkt. # 1, 39), as amended and supplemented (Dkt. ## 12, 13, 14, 35, 59, 60, and 62) is **denied**.

3.    A separate Judgment shall be entered in this case.


DATED THIS 5th DAY of NOVEMBER, 2007.


_Terence Kern_

TERENCE KERN
UNITED STATES DISTRICT JUDGE

31